# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION


SHERIL L. MANCINO
                    Plaintiff,

vs.                                              CASE NO: 2:08-cv-376-FtM-29SPC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.
_____


## REPORT AND RECOMMENDATION[1]

This matter comes before the Court on the Plaintiff, Sheril L. Mancino's, Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. #1) filed on May 12, 2008. The Plaintiff filed her Memorandum of Law in Support of the Complaint (Doc. #13) on October 21, 2008. The Commissioner filed a Memorandum of Law in Support of the Commissioner's Decision (Doc. #14) on November 19, 2008. Thus, the Motion is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

_____

---

[1]This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

## FACTS

### *Procedural History*

On March 10, 2005, the Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning February 6, 2004. (Tr. 20). The claim was denied initially on May 31, 2005, and upon reconsideration on August 24, 2005. (Tr. 70-71, 74-76). The Plaintiff timely filed a Request for Hearing on September 15, 2005. (Tr. 20, 69). A hearing was scheduled before the Honorable Robert D. Marcinkowski, Administrative Law Judge ("ALJ"), on March 13, 2007, in Ocala, Florida. (Tr. 775-800). The ALJ issued an unfavorable decision on April 18, 2007. (Tr. 20-31). The Plaintiff timely filed a Request for Review by the Appeals Council. (Tr. 15). The Appeals Council denied the Plaintiff's Request for Review on June 29, 2007. (Tr. 8-10). Therefore, the decision of the Commissioner became final. Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint with this Court.

### *Plaintiff's History*

The Plaintiff was born on January 10, 1958, making her forty-six (46) years old at the time of the alleged onset disability date. (Tr. 31). The Plaintiff has a high school education and speaks English. (Tr. 31). The Plaintiff has a past relevant work history as a medical assistant. (Tr. 30). The Plaintiff alleges an onset disability date of February 6, 2004.

### *Medical History*

On August 3, 2004, the Plaintiff presented to Dr. Gela Mchedlishvili with complaints of intermittent malaise, fatigue, and decreased energy. (Tr. 323-329). The Plaintiff received medication for hypertension, rosacea, gastroesphogeal reflux disease (GERD) and allergic sinusitis. (Tr. 327-328).

The Plaintiff continued to report intermittent myalgias and arthralgias. (Tr. 325). The Plaintiff presented to Dr. Mchedlishvili for follow-up on November 8, 2004. (Tr. 325). The Plaintiff had a blood workup which revealed an elevated ESR, but otherwise negative. ANA and rheumatoid factors were negative. (Tr. 325). The Plaintiff was iron deficient was taking medication for arthralgia/myalgia, hypertension, depression, and esophagitis. (Tr. 323-324).

The Plaintiff was referred to Dr.Victoria Torralba, a rheumatologist, on December 8, 2004. (Tr.267-268). The Plaintiff described her history of multiple joint and muscle pain along with some tender subcutaneous nodules in her legs and popliteal area since September 2004. The Plaintiff stated she gained 25 pounds in the past year and also suffered from fatigue, body weakness, severe migraine headaches, and some intermittent numbness and tingling of the hands. (Tr. 267). The Plaintiff complained of symptoms often seen in fibromyalgia patients, however, examination revealed no tender points and the Plaintiff was doing well on medication. (Tr. 267). The Plaintiff complained of generalized body weakness and fatigue, intermittent numbness or tingling of the hands. (Tr. 267). The Plaintiff also complained of early morning stiffness and non-restorative sleep. (Tr. 267). The Plaintiff had a history of hypertension and iron deficiency anemia and depression. Examination revealed elevated blood pressure, the presence of Raynaud's Phenomenon of the fingers and toes, and tender subcutaneous nodules over the popliteal areas of the legs. (Tr. 267). The Plaintiff was diagnosed with Raynaud's Phenomenon[2], Erythema nodosum related to birth control pills, iron deficiency, and hypothyroidism. (Tr. 268).

---

[2]Raynaud's Phenomenon is also known as Acrocyanosis. It is a condition marked by symmetrical cyanosis of the extremities, with persistent uneven blue or red discoloration of the skin of the digits, wrists, and ankles with profuse sweating and coldness of the digits. *Dorland's Medical Dictionary*, 30th Edition, p.20

The Plaintiff was treated from March 2005 through September 2005 by Dr. Paula Lovett, Ph.D. (Tr. 400-405, 539). The Plaintiff presented with chief complaints of muscle pain, headaches, and gastrointestinal problems. (Tr.405). The Plaintiff also complained of depression, anxiety and confusion. (Tr. 405). On April 19, 2005, the Plaintiff stated she was walking with a limp and having trouble with her right hip. (Tr. 403). She was being evaluated by Shands for fibromyalgia and Lupus. (Tr. 403). Dr. Lovett discussed cognitive behavioral pain management and advised the Plaintiff to practice deep breathing and progressive relaxation strategies. (Tr. 403).

On May 9, 2005, Dr. Lovett completed a mental health report regarding the Plaintiff. (Tr. 292-295). Dr. Lovett opined that the Plaintiff suffered from a mental impairment that significantly interfered with her daily functioning and referred her to Dr. Byrd, a psychiatrist. (Tr. 292). Dr. Lovett opined the Plaintiff had logical thought process with some passive suicidal ideation and moderate to marked deficits in concentration and memory. (Tr. 294). It was noted the Plaintiff's behavior changed with her mood. (Tr. 295). The Plaintiff is competent to manage her finances and can understand and perform simple instructions. (Tr. 295). Dr. Lovett stated the Plaintiff suffered from major depression and chronic pain. (Tr. 294).

On May 17, 2005, the Plaintiff returned to Dr. Lovett. (Tr. 402). Dr. Lovett noted the Plaintiff was also seen by Dr. Timothy L. Byrd. (Tr. 402). Dr. Byrd prescribed the Plaintiff Wellbutrin, Symbalta and trazodone. (Tr. 402). The Plaintiff reported initial improvement with the medication but was complaining of sleep troubles and feeling more depressed. (Tr. 402). Dr. Lovett worked with the Plaintiff on cognitive behavioral pain management strategies, and developing a daily routine. (Tr. 402).

On September 27, 2005, the Plaintiff presented to Dr. Lovett with psychological complaints.

(Tr. 539). The Plaintiff indicated that she contacted Dr. Byrd regarding the medication. (Tr. 539). The Plaintiff was experiencing increased headaches and visual disturbance. (Tr. 402). Dr. Lovett concentrated on empowerment issues and mindfulness and staying on a daily routine. (Tr. 539).

The Plaintiff was referred to Dr. Elena Barnes, a rheumatologist, on April 11, 2005. (Tr. 279-285). The Plaintiff described suffering from profound fatigue for the past three years, which was later followed by pain in her back, neck, hands and right hip. The Plaintiff's symptoms progressively became worse over the years and she had to stop working in February 2004. Examination revealed The Plaintiff was slightly depressed and very tearful and had slight tenderness of her abdomen. The Plaintiff had a leg length discrepancy and tenderness of the right hip with decreased range of motion. Dr. Barnes further noted mild scoliosis with the left shoulder higher than the right. She had eighteen positive fibromyalgia tender points with hyperesthesia[3] throughout her body. Dr. Barnes diagnosed her with fibromyalgia syndrome and changed her medications.

On May 27, 2005, the Plaintiff underwent a cervical MRI. (Tr. 331). Results showed mild degenerative disc disease, primarily at the C6-7 level. The disc space was narrowed and evidence of mild diffuse disc bulging resulting in encroachment on ventral subarachnoid space. (Tr. 331). There was no evidence of spinal stenosis or foraminal stenosis, and no focal disc herniations. (Tr. 331). The impression was C6-7 degenerative disc disease including evidence of diffuse disc bulging encroaching the ventral subarachnoid space, with no evidence of stenosis. (Tr. 331). The Plaintiff underwent therapy at the Gulf Coast Aquatic Rehabilitation Center. (Tr. 343-380).

The Plaintiff presented to Dr. Kenneth Galang on July 27, 2005, for treatment of

---

[3]Hyperesesthesia refers to a dysesthesia consisting of increased sensitivity, particularly a painful sensation from a normally painless touch stimulus. *Dorland's* at 881.

fibromyalgia symptoms. (Tr. 470-474). Dr. Galang noted the Plaintiff's level of function was mostly independent with walking, dressing, grooming, bathing, toileting, and driving. (Tr. 470). Occasional confusion does limit her driving. (Tr. 470). The Plaintiff described her pain between a 7 and 9. (Tr. 471). She describes the pain as aching, stabbing, throbbing, burning pain that builds up slowly, lasting all day and night and never completely goes away. (Tr. 471). The pain sometimes improves with movement, medication with heat or with water exercises. (Tr. 471). Upon physical examination, range of motion appeared within normal limits. (Tr. 473). The Plaintiff had spasming and tenderness to palpation over the upper trapezius, cervical paraspinal muscles, and levator scapula on both sides. (Tr. 473). Tenderness persisted in 18 of 18 tender points. (Tr. 473). Extremities had full range of motion. (Tr. 473). Neurological examination revealed 5/5 strength in all extremities, sensation was intact, gait was steady and Plaintiff could walk on heels and toes without difficulty. (Tr. 473). Dr. Galang opined the Plaintiff suffers from fibromyalgia and other various problems including irritable bowel syndrome, chronic fatigue complaints and insomnia. (Tr. 474). There was the possibility of Sjogren's syndrome. (Tr. 474). The Plaintiff was to be kept on the current pain regimen. (Tr. 474).

On August 22, 2005, the Plaintiff returned to Dr. Galang for a follow-up visit. (Tr. 469). The lab work revealed normal levels for sedimentation rate, rheumatoid factor and ANA. Her SSA and SSB levels were negative of evidence for Sjogren's syndrome. (Tr. 469). The Plaintiff complained of increased tremors depending on physical activity. (Tr. 469). Fibromyalgia was the primary diagnosis. (Tr. 469). The Plaintiff was referred for a neurological examination to determine the cause of the tremors. (Tr. 469).

At the request of Dr. Lovett, the Plaintiff presented to Dr. Timothy Byrd, a psychiatrist, on

April 28, 2005 and continued treatment until November 2005. (Tr.432-450). During this time period, she reported frequent bouts of sadness, tearfulness, diminished libido, weight fluctuations, intermittent insomnia, diminished concentration, energy, anhendonia[4] passive suicidal ideations, tremulousness, increasing isolation and withdrawal. Upon examination, the Plaintiff was tearful and quite sad and her mood was severely depressed, hopeless, and helpless. The Plaintiff was diagnosed with major depressive disorder, single episode, severe without psychotic features. (Tr. 437). The Plaintiff's medications were again modified and the Plaintiff was told to return for medication management and psychiatric supervision. (Tr. 437).

On November 21, 2005, Dr. Byrd completed a Mental Disorders Disability Evaluation for Social Security. (Tr.439-450). Dr. Byrd opined that the Plaintiff was clinically disabled secondary to chronic treatment of refractory depression concomitant with chronic pain resulting in persistent fatigue, severely diminished stamina, and cognitive decline. (Tr. 440). There was no evidence of an organic mental disorder. (Tr. 441). The Plaintiff had symptoms of affective disorder with disturbance of mood, accompanied by a full or partial manic or depressive syndrome. (Tr. 443). The Plaintiff suffers from marked limitations in activities of daily living, difficulties in maintaining social function and in maintaining concentration, persistence and pace. (Tr. 449). The Plaintiff had four (4) or more repeated episodes of decompensation. (Tr. 449). In addition, the Plaintiff had a marked limitation in her ability to make judgments based on simple work related decisions. (Tr. 450). The Plaintiff had extreme limitations in her ability to perform activities within a schedule, maintain regular attendance and be punctual and complete a normal workday/workweek without interruption

---

[4]Anhendonia is defined as the total loss of feeling of pleasure in acts that normally give pleasure. Dorland's at 90.

from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 450).

Dr. Galang referred the Plaintiff to Dr. Michael Jugan for treatment in December 2005. (Tr.454-464). The Plaintiff's first examination was December 12, 2005, in which the Plaintiff presented with symptoms of carpal tunnel, right more severe than left. (Tr. 464). Examination revealed full range of motion of the elbow and wrist. (Tr. 464). The Plaintiff has a tremor of her right hand and positive provocative carpal tunnel testing. (Tr. 464). Dr. Jugan recommended carpal tunnel release on the right followed by the left at a later date. (Tr. 464).

On January 9, 2006, Dr. Jugan performed a right carpal tunnel decompression. (Tr. 462). As of March 14, 2006, the Plaintiff was still experiencing some weakness in her hand. (Tr. 457). The Plaintiff was referred for hand therapy. On May 30, 2006, the Plaintiff continued to complain of continued pain in the right hand and was now getting symptoms in the left hand due to overuse. (Tr. 453). Dr. Jugan did not anticipate a full recovery of the Plaintiff's right hand and advised that it was not likely that the Plaintiff would be able to go back to an occupation requiring repetitive use of her fingers or hands. (Tr. 464). On August 7, 2006, Dr. Jugan performed a left carpal tunnel decompression on the Plaintiff. (Tr. 556-567).

On February 2, 2006, the Plaintiff presented to Dr. Juan Bustillo, a rheumatologist, (Tr. 503-505, 635). The Plaintiff described diffuse myalgias beginning three (3) to four (4) years prior (Tr. 503). The Plaintiff's hands and feet swelled and occasionally her knees would as well. (Tr. 503). Physical examination revealed some tenderness over the MCP and PIP joints. (Tr. 504). Range of motion for the hips, knees, and ankles was satisfactory. (Tr. 504). The Plaintiff was diagnosed with rheumatism unspecified and she was referred for x-rays and a full serologic work up. Dr. Bustillo

8

further opined that the Plaintiff may be dealing with rheumatoid arthritis seronegative, possible Sjogren's syndrome despite negative SSA and SSB antibodies. (Tr. 505).

On May 31, 2006, Dr. Bustillo dictated a letter regarding the Plaintiff's condition. (Tr. 635). Dr. Bustillo diagnosed the Plaintiff with rheumatoid arthritis, describing it as a chronic condition causing joint swelling, pain, limited range of motion, and debilitating fatigue. (Tr. 635). The Plaintiff had some mild improvement with medication but unfortunately due to liver enzyme abnormalities, her medication was discontinued and would hopefully be introduced at a later date. (Tr. 635). At present, she had difficulty with overuse of her joints and significant fatigue. (Tr. 635). Dr. Bustillo stated that it was unlikely that she would be able to perform her regular activities at work at this time. (Tr. 635).

On March 25, 2006, the Plaintiff presented to Dr. Galang for a follow-up visit. It was noted the Plaintiff was placed on prednisone and Plaquenil and stated she may be doing better. (Tr. 456). The Plaintiff reported weather caused flare-ups of her condition. (Tr. 456). However, the flare-ups were more tolerable. (Tr. 456). The Plaintiff mentioned asymmetry to her legs but was due more to asymmetric muscle spasming or tightness in the pelvic region. (Tr. 456). The Plaintiff was encouraged to continue Prednisone and Plaquenil and she was referred to physical therapy. (Tr. 456). On June 12, 2006, the Plaintiff returned to Dr. Galang for a follow-up. (Tr. 451). The Plaintiff's liver enzymes were elevated. (Tr. 451). The Plaintiff reported increased pain and Dr. Galang focused on trying to control her pain better. (Tr. 452). Physical examination revealed tenderness at her wrist and slight decreased mobility in her ulnar styloid region, and swelling in her right upper and lower joints. (Tr. 451). The Plaintiff was started on Ultram ER and advised to use an ETPS machine to help reduce her spasms. She was diagnosed with rheumatoid arthritis. (Tr.

452).

Treatment records reflect Dr. Byrd treated the Plaintiff from March 13, 2006 through January 29, 2007. (Tr.476-483). On June 12, 2006, the Plaintiff was struggling with mood dysphoria secondary to pain. (Tr. 482). The Plaintiff's mood was noted to be moderately depressed. (Tr. 482).

On August 21, 2006, Dr. Byrd phoned the Plaintiff in response to a letter received from her. (Tr. 480). The letter stated she was feeling extremely depressed and was suffering with some suicidal ruminations. (Tr. 480). She stated in her letter "death seems so much easier than life." (Tr. 480). Dr. Byrd spoke to the Plaintiff and advised her to call 911 if she was feeling threatened or was planning on harming herself in any way. (Tr. 481).

The Plaintiff's depression continued to increase on September 7, 2006. (Tr. 479). The Plaintiff reported being easily tearful and somewhat overwhelmed. (Tr. 479). The Plaintiff's Wellbutrin dose was increased. (Tr. 479). On January 29, 2007, she was diagnosed with major depressive disorder, recurrent, mild without psychotic features. (Tr. 476-477).

On May 23, 2007, Dr. Bustillo completed a medical source statement. (Tr. 706-712). Dr. Bustillo opined that the Plaintiff was only able to lift and carry less than two (2) pounds occasionally and frequently. (Tr. 706). The Plaintiff could only sit, stand and walk for less than two (2) hours in an eight (8) hour workday and sit less than thirty (30) minutes in an eight (8) hour workday. (Tr. 706). The Plaintiff was restricted from pushing and operating pedals or machinery and she could not push and pull with her upper extremities. (Tr. 706). Objective findings were swelling, pain inecreased grip strength in her hands, and swelling and pain in both feet. (Tr. 707). The Plaintiff could not climb, balance, stoop, kneel, crawl or crouch. (Tr. 707). The Plaintiff also had trouble fingering and feeling due to swelling and pain of her fingerjoints of both hands. She would need four

(4) or more thirty (30) minute breaks in the morning and would need to avoid even moderate exposure to extreme heat and cold, vibration and machinery. (Tr. 708). The Plaintiff's pain constantly interfered with her concentration and her ability to follow and carryout, and understand simple instructions, use judgment, respond to supervision, co-workers and usual work situations, and to deal with changes in a routine work setting. She would be constantly limited in her ability to complete a normal workweek and workday without interruptions from psychological based symptoms. (Tr. 709). The Plaintiff was also constantly limited in her ability to accept instructions and respond appropriately to criticism from supervisors, to respond appropriately to changes in a work setting, to be aware of normal hazards and take appropriate precautions, the ability to travel in unfamiliar places or use public transportation and the ability to set realistic goals or make plans independently of others. (Tr. 709). Dr. Byrd also filled out an assessment on May 15, 2007. (Tr. 711-713). Dr. Byrd opined that the Plaintiff was considerably more limited than determined by the ALJ. (Tr. 711-713). The Plaintiff had been disabled from substantial gainful employment since 2003. The Plaintiff continued to suffer from rheumatoid arthritis symptoms in 2007 and received continuing treatment from Dr. Galang. (Tr. 654-659). During this time period, her medication dosages were adjusted and she was experiencing increasing difficulty with her activities of daily living. (Tr. 654-659).

On April 23, 2007, Dr. Jugan's records reveal the Plaintiff had a flare-up of her fibromyalgia. (Tr. 687). She also had mid and low back pain. The Plaintiff's left fingers were discolored and cold when compared to the right. (Tr. 687). Examination revealed trigger points throughout her cervical spine with spasms. (Tr. 687). The Plaintiff was told to increase her Ultram dose and continue with her TENS unit. (Tr. 687).

On May 14, 2007, the Plaintiff reported intermittent numbness and tingling in her hands and limited range of motion of her left wrist. (Tr. 686). Examination revealed tenderness over her left wrist with swelling. (Tr. 686). Dr. Jugan offered no other surgical alternatives and advised that she avoid aggravating activities, otherwise using her hand and wrist as tolerated. (Tr. 686). She was referred to Dr. Bustillo for re-evaluation.

<u>*Administrative Law Judge's Decision*</u>

Upon consideration of the record, the Administrative Law Judge (ALJ) found the Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008. (Tr. 22). The Plaintiff was found to have not engaged in substantial gainful activity since February 6, 2004, the alleged onset date of disability. (Tr. 22). The ALJ found the Plaintiff has the following severe impairments: fibromyalgia, rheumatoid arthritis, and affective disorder, however, the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR §404.1520(d), 404.1525 and 404.1526. (Tr. 22). The ALJ stated that after careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to engage in light work requiring the lifting/carrying of up to 10 pounds. (Tr. 25). The Plaintiff is able to stand/walk for up to a total of about 2 hours per workday, and sit for at least a total of about 6 hours per workday. (Tr. 25). The Plaintiff was also limited to the performance of simple, routine tasks, and should avoid concentrated exposure to cold. (Tr. 25). The ALJ determined the Plaintiff is unable to perform any of her past relevant work. (Tr. 29). The ALJ noted the Plaintiff was born on January 10, 1958, and on the alleged disability onset date, was 46 years old which is defined as a younger individual (age 45-49). (Tr. 29). The Plaintiff has a high school education and is able to communicate in English. (Tr. 29). The ALJ found that transferability

of job skills was not material in the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Plaintiff is "not disabled" whether or not the Plaintiff has transferable job skills. (Tr. 29). In considering the Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the Plaintiff was capable of performing. (Tr. 29). Thus, the Plaintiff was found not to have been under a disability, as defined in the Social Security Act from February 6, 2004, through the date of the ALJ's decision. (Tr. 30).

## THE STANDARD OF REVIEW

### A. Affirmance

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Commissioner, WL 4365647 *2 (M.D. Fla. December 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971); McRoberts v. Bowen, 841 F. 2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[5]. 20 C.F.R. §§ 404.1520(a), 404.920(a). The Commissioner's

---

[5]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
Step 1. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
Step 2. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
Step 3. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.
Step 4. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R.

findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla-*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, WL 4365647 *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F. 3d 1232, 1240 n. 8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]."Phillips, 357 F. 3d at 1240 n. 8; Dyer v. Barnhart, 357 F. 3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

**B. Reversal and Remand**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a

---

§§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

14

Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Commissioner, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Thomas v. Barnhart, WL 3366150 *3 (11th Cir. December 7, 2004) (citing Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993)). The district court may also remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. Johnson v. Barnhart, 268 F. Supp. 2d 1317, 1321 (M.D. Fla. 2002) (citing Jackson v. Chater, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996)).

"To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim." Johnson, 268 F. Supp. 2d at 1321; Jackson, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); Davis, 985 F.2d at 534 (remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards). "Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision." Johnson, 268 F. Supp. 2d at 1321 (citing Falcon v. Heckler, 732 F.2d 827, 830 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain the his basis

of his decision)).

On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Johnson, 268 F. Supp. 2d at 1321; *See* Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)(finding the Court may at any time order additional evidence to be taken before the Secretary upon a showing that there is new evidence which is material and that there was good cause for the failure to incorporate such evidence into the record during a prior proceeding); *See* Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (remanding on the grounds that it is reversible error for the ALJ not to order a consultative examination when warranted). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. Jackson, 99 F.3d at1095; Johnson, 268 F. Supp. 2d at 1321.

In contrast, a sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. Sentence six of § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405 (g) (sentence six). "To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level." Green v Commissioner, 2007 WL 4287528 * 3 (M.D. Fla. Dec. 4, 2007) (citing Jackson, 99 F.3d at 1090 -

1092; *See also* Keeton v. Dept. of Health and Human Serv., 21 F.3d 1064, 1068 (11th Cir. 1994)).

With a sentence-six remand, the parties must return to the district court after remand to file modified

findings of fact. Jackson, 99 F.3d at 1095. The district court retains jurisdiction pending remand,

and does not enter a final judgment until after the completion of remand proceedings.[6] Id.

## THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve

months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe,

making the claimant unable to do his or her previous work, or any other substantial gainful activity

which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.

## DISCUSSION

The Plaintiff states the case should be remanded to the Commissioner due to the following

errors: (1) the ALJ failed to give the proper weight to the opinion of her treating orthopedic surgeon;

(2) the ALJ failed to make any findings of fact in regard to the Plaintiff's ability to perform fine and

gross manipulations with her hands; (3) the ALJ failed to acknowledge her treating rheumatologist,

Dr. Galang's opinion; (4) the ALJ erred in discrediting the opinions of treating physicians Dr. Byrd,

Dr. Lovett, and Dr. Bustillo; (5) the Appeals Counsel abused its discretion in failing to remand the

---

[6]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. Jackson, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. Id. In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. Id.

case despite the receipt of new material evidence. The Government replies that substantial evidence supports the Commissioner's findings that the Plaintiff could perform the light work identified by the Vocational Expert (VE).

### (1) Whether the Commissioner Failed to Give the Proper Weight to the Opinion of the Orthopedic Surgeon

The Plaintiff argues the ALJ failed to acknowledge the opinion of her othropedic surgeon that even after she underwent carpal tunnel surgery she would not be able to return to any occupation requiring repetitive use of her fingers or hands from an othopedic standpoint.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527 (d); Lewis, 125 F.3d at 1439 - 1441; Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580, (11th Cir. 1991) (ALJ properly discounted treating Physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 1331, 1334 (M.D. Fla. 2003). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d

1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. 20 C.F.R. § 404.1527 (d)(2); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984). Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. Morrison, 278 F. Supp. at1334.

The ALJ noted the Plaintiff underwent right carpal tunnel decompression on January 9, 2006, by Dr. Jugan. (Tr. 24, 462). The ALJ stated in his decision:

> On January 9, 2006, she underwent right carpal tunnel decompression. (Exhibit 18F/12). During a follow-up examination on January 19, 2006, Dr. Galang noted that the claimant's recent carpal tunnel release was stable. Ms. Mancino was continuing to experience fibromyalgia that was associated with irritable bowel, chronic fatigue, and some short-term memory dysfunction. He continued to claimant on Vicoprofen and Darvocet for pain; Primidone for tremors; Flexeril for muscle spasms; and Fioricet for migraines. By March 2006, the claimant [sic] right carpel tunnel syndrome had improved significantly. Her fingers felt better and the numbness had decreased. Upon reporting that she was continuing to experience some weakness of the right hand, she was continued with occupational therapy. On April 24, 2006, Dr. Jugan noted the claimant had full ranges of motion of the wrist and fingers.

(Tr. 24). Thus, irrespective of the Plaintiff's argument, the ALJ noted the Plaintiff's surgeon's statement that the Plaintiff had a full range of motion in her wrist and fingers. Dr. Jugan did not anticipate a full recovery of the Plaintiff's right hand and advised that it was not likely that the

Plaintiff would be able to go back to an occupation requiring repetitive use of her fingers or hands. (Tr. 464). Although Dr. Jugen did opine that she could not return to her past relevant work as a surgical assistant, that opinion does not conflict with the ALJ's decision. Thus, the ALJ did address the treating orthopedic surgeon's opinion and gave the proper weight under the law and regulations.

### (2) Whether the ALJ Failed to Make any Findings of Fact in Regard to the Plaintiff's Ability to Perform Fine and Gross Manipulations with Her Hands

The Plaintiff argues the ALJ failed to consider whether or not she could perform fine and gross manipulations with her hands. The Government acknowledges the ALJ failed to specifically address the Plaintiff's treating physician's source's opinion concerning the Plaintiff's ability to use her hands for repetitive activities. The Government points out that the State Agency Physicians concluded the Plaintiff could perform light work and did not have any manipulative restrictions. Therefore, the Government argues the failure is harmless error, and not cause for remand.

The standard is clear, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. 20 C.F.R. § 404.1527 (d); Lewis, 125 F.3d at 1439 - 1441; Sabo v. Commissioner of Social Security, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996). The ALJ may discount the treating physicians opinion, however, he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. Morrison, 278 F. Supp. at1334. Here, as the Government acknowledges, the ALJ failed to even address the treating physican's opinion. Thus, it is respectfully recommended the case be remanded to address the Plaintiff's fine and gross manipulations with her hands.

### (3) Whether the ALJ failed to Acknowledge Plaintiff's Treating Rheumatologist, Dr. Galang's Opinion

The Plaintiff states the ALJ erred by failing to address the opinion of Dr. Galang. Dr. Galang

opined the Plaintiff could not maintain the same position for any length of time and that she needed to change positions between sitting, standing, and walking just to maintain some level of comfort. (Tr. 461). Dr. Galang also stated the Plaintiff became incapacitated after a day or two of activity and then needed up to two (2) days to rest. (Tr. 461). The ALJ did note that Dr. Galang opined the Plaintiff's recent carpal tunnel release was stable. (Tr.24).

Under the CFR and related case law, should an ALJ discount the treating physician's opinion, he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. Morrison, 278 F. Supp. at1334. Here, the ALJ did not address Dr. Galang's opinion nor state why he discredited that opinion. The Government in its Response acknowledges that the ALJ did not address Dr. Galang's opinion. Therefore, the case should be remanded to the Commissioner for a review and proper analysis of Dr. Galang's diagnosis.

### (4) Whether the ALJ Erred in Discrediting the Opinions of Treating Physicians Dr. Byrd, Dr. Lovett, and Dr. Bustillo

The Plaintiff states the ALJ did not properly discount the opinions of Dr. Byrd, Dr. Lovett, and Dr. Bustillo. Dr. Byrd was the Plaintiff's treating psychiatrist, Dr. Lovett was her treating psychologist and Dr. Bustillo was her treating rheumatologist. The Government responds that the conclusions of Doctors Byrd, Lovett, and Bustillo were not supported by the treatment notes, which indicated the Plaintiff improved with treatment.

Regarding Dr. Lovett's assessment that the Plaintiff was unable to work, the ALJ, found Dr. Lovett's assessment was not entitled to great weight. (Tr.26). As grounds for not giving Dr. Lovett's assessment great weight, the ALJ stated "Dr. Lovett did not specify why the claimant's depression and chronic pain prevented her from working. (Tr. 26). Secondly, the ALJ found Dr. Lovett's

conclusion was not very well supported by the treatment records. (Tr. 26).  Regarding Dr. Byrd, the ALJ discredited his disability assessment by noting that only the Commissioner can make a determination of disability.  The ALJ continued that Dr. Byrd's conclusion was not supported by his own treatment records. (Tr. 26).

The ALJ found the Plaintiff had not required psychiatric hospitalization since the alleged disability onset date and that her symptoms were largely kept under control with psychotropic medications. (Tr. 29).  The ALJ noted:

> [t]hough she has required some ongoing treatment for depression, the medical record does not indicate that it is severe enough to preclude her from engaging in simple, routine work.  Again, it is clear that Ms. Mancino has not required psychiatric hospitalization since the alleged disability onset date.  Her symptoms have largely been kept under control with psychotropic medications and occasional follow-up visits for evaluation and medication adjustment.  As of late January 2007, Dr. Byrd had noted that Ms. Mancino was doing well. . . handling the stress of having to help take care of father-in-law who moved in with [her family] . . . ." (Exhibit 19F/1).  The claimant reported that the increased dosage of Wellbutrin had helped significantly; thus she was able to handle many of the stresses that had previously overwhelmed her.  All self-reported symptoms and limitations inconsistent with the residual functional capacity for simple, routine, light work are not well supported by the objective medical record.

(Tr. 29) (internal quotes omitted).  The ALJ clearly articulated that the Plaintiff's treatment regimen was controlling her depression.  As noted above, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). In this instance, the ALJ addressed the Plaintiff's alleged mental disabilities and provided sufficient evidence from the medical record to discredit any contrary opinions offered by Dr. Byrd or Dr. Lovett.

Regarding Dr. Bustillo, the ALJ noted that while Dr. Bustillo opined that the Plaintiff could not perform her "regular activities at work," he never addressed whether the Plaintiff would be able to perform other types of work that would require light or sedentary exertion. (Tr. 26). The ALJ continued that the treatment records of Dr. Bustillo indicated the Plaintiff was "doing better" by November 21, 2006. Initially, the opinion of Dr. Bustillo does not conflict with the ALJ's own opinion that the Plaintiff would not be able to return to her prior employment.

In his decision, the ALJ set out clear and well supported reasons for discrediting the opinions of Dr. Lovett, Dr. Byrd and Dr. Bustillo. Thus, it is respectfully recommended the Plaintiff's Motion for Remand regarding the ALJ's treatment of Dr. Lovett, Dr. Byrd and Dr. Bustillo's opinions should be denied.

### *(5) The Appeals Council Abused Its Discretion in Failing to Remand the Case Despite the Receipt of New Material Evidence*

The Appeals Council "will" review a case if there appears to be an abuse of discretion by the ALJ, if there is an error of law, or if the ALJ's action, findings, or conclusions are not supported by substantial evidence. 20 C.F.R. § 416.1470; Sims v. Apfel, 530 U.S. 103, 106-107, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000); Parker v. Bowen, 788 F.2d 1512, 1518 (11th Cir. 1986) (en banc). The Appeals Council's denial of review is subject to judicial review to determine if it is supported by substantial evidence. Sims, 530 U.S. at 111.

The Plaintiff argues the Appeals Council erred when it did not send the case back to the ALJ for consideration of the new materials presented to the Appeals Council. The Government argues the new materials are cumulative.

Just as the ALJ has a duty to investigate the facts and to develop the arguments both for and

against the granting of benefits, the Appeals Council's review is similarly broad. Id. at 111-112. When the Appeals Council refuses to consider new evidence submitted to it and denies review, the Appeals Council's decision denying review is subject to judicial review. 20 C.F.R. § § 404.970 (b); 416.1470 (b); Keeton, 21 F.3d at 1066. Furthermore, the Appeals Council commits reversible error when it refuses to consider new evidence if that evidence was available at the time of or prior to the ALJ's hearing and then denies review. Williams v. Commissioner, 407 F. Supp. 2d 1297, 1302 (M.D. Fla. 2005) (citing Keeton, 21 F.3d at 1066). Similarly, it is reversible error for a district court to consider only the evidence presented to the ALJ — and to ignore the new evidence presented to the Appeals Council — in reviewing a decision of the Appeals Council. Id. The Appeals Council must consider and evaluate new evidence to determine whether there is a basis for changing the ALJ's decision. Falge v. Apfel, 150 F.3d 1320, 1322 n. 4 (11th Cir. 1998). When the Appeals Council has denied review, the district court looks only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence. Id. at 1323. The Eleventh Circuit directs the district courts to consider evidence submitted to the Appeals Council in reviewing the Appeals Council's denial of review. Falge, 150 F.3d at 1324; Keeton, 21 F.3d at 1066; See Williams v. Commissioner, 407 F. Supp 2d 1297, 1302 (M.D. Fla. 2005) (concluding that Keeton and Falge are consistent and that a claimant may always challenge the decision of the Appeals Council to deny review). Indeed, it makes sense that Congress has provided for judicial review of the Commissioner's final decision — the last step of review necessary to exhaust administrative remedies. When the Appeals Council refuses to consider new evidence submitted to it, the Appeals Council's decision denying review is subject to judicial review for error. Ingram v. Commissioner, 496 F. 3d 1253, 1264-1266 (11th Cir. 2007). Similarly, when the Appeals Council

denies review of an ALJ's decision after receiving, considering, and evaluating new and material evidence that clearly and thoroughly undermines the ALJ's findings of fact and conclusions of law, the Appeals Council's decision denying review also must be subject to judicial review for error. 20 C.F.R. § 404.970 (b) (Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the relevant period, and it will then review the case if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record); Ingram, 496 F. 3d at 1264-1266; Falge,150 F.3d at 1324; Keeton, 21 F.3d at 1068. The Commissioner cannot avoid judicial review of the Appeals Council's decision to deny review by considering but not acting on new evidence that is highly probative of disability, or by considering but not acting on evidence that shows in retrospect that an ALJ's action, findings, or conclusion are contrary to the weight of the evidence currently of record.

The Appeals Council found the new information would not change the ALJ's determination that the Plaintiff could work jobs classified as sedentary light work. (Tr. 9). A review of the Plaintiff's additional submissions to the Appeals Council shows the information is cumulative and did not put forth any new material evidence for the Appeals Counsel to review.

## CONCLUSION

Based upon the record before the Court and the Parties memoranda of law, the ALJ failed to address the Plaintiff's fine and gross manipulations with her hands and failed to properly discredit Dr. Galang's opinion that the Plaintiff could not maintain the same position for any length of time and that she needed to change positions between sitting, standing, and walking just to maintain some level of comfort, and further that she became incapacitated after a day or two of activity and then needed up to two (2) days to rest. Therefore, it is respectfully recommended the case should be

remanded to the Commissioner for further review.

Accordingly it is hereby

**RESPECTFULLY RECOMMENDED:**

The Final Decision of the Commissioner of Social Security Denying the Plaintiff, Sheril L. Mancino's Claim for Disability Insurance should be **REMANDED** pursuant to 42 U.S.C. § 405 (g)(Sentence Four) for further consideration of the following issues:

(1) The Plaintiff's ability to perform fine and gross manipulations with her hands;

(2) Consideration of the treating rheumatologist, Dr. Galang's opinion.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE AND ORDERED** at Fort Myers, Florida, this _20th___ day of May, 2009.

**SHERI POLSTER CHAPPELL**
**UNITED STATES MAGISTRATE JUDGE**

Copies:  Counsel of record, MJCD